**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NOAH ROUSE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-cv-5260 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CHICAGO TRANSIT AUTHORITY and | ) | |
| AMALGAMATED TRANSIT UNION | ) | |
| LOCAL 241, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on Plaintiff's motion [86] to reconsider the Court's July 31, 2014 order [57] granting in part and denying in part Defendant Chicago Transit Authority's motion to dismiss Plaintiff's second amended complaint ("SAC"). For the reasons explained below, the Court grants Plaintiff's motion [86] in part and reinstates Plaintiff's Rehabilitation Act claims (Counts I and II of the SAC) to the extent that they were previously dismissed. In addition, the Court dismisses Defendant Amalgamated Transit Union Local 241 from the case without prejudice due to Plaintiff's failure to serve the Union. See [57] at 23. Finally, the Court denies Defendant's motion [97] to dismiss for want of prosecution because it was filed while Plaintiff's motion to reconsider was pending. This case is set for further status hearing on October 5, 2016.

**I.       Background**

In his SAC, Plaintiff Noah Rouse, Jr. ("Plaintiff") brought suit against Defendant Chicago Transit Authority ("Defendant") for alleged violations of the Rehabilitation Act of 1973 ("Rehabilitation Act") (Counts I and II) and the Americans with Disabilities Act ("ADA")

(Counts III, V, VI, and VII). Plaintiff also brought suit against the Amalgamated Transit Union Local 241 ("Union") for breach of fiduciary duty (Count IV). The SAC [35] is described in detail in the Court's order [57] on Defendant's motion to dismiss, knowledge of which is assumed here. On July 31, 2014, the Court granted in part and denied in part Defendant's motion to dismiss the SAC. The Court dismissed Plaintiff's ADA claims in full, dismissed the Rehabilitation Act claims in part, and proposed to dismiss the breach of fiduciary duty claim based on Plaintiff's failure to serve the Union. On December 10, 2015, Plaintiff filed a motion for reconsideration of the Court's partial dismissal of the Rehabilitation Act claims.

## II.    Analysis

Section 504(A) of the Rehabilitation Act ("Act") provides that "[n]o otherwise qualified individual with a disability * * * shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The Rehabilitation Act "prohibits discrimination in the same manner as the Americans with Disabilities Act and uses the same standards but applies to employees of federally funded programs." *Kraus v. Shinseki*, 846 F. Supp. 2d 936, 947 (N.D. Ill. 2012).[1] A plaintiff may prove a violation of the Rehabilitation Act by showing: "(1) disparate treatment, (2) disparate impact, or (3) a refusal to make a reasonable accommodation." *Daveri Dev. Grp., LLC v. Vill. of Wheeling*, 934 F. Supp. 2d 987, 996 (N.D. Ill. 2013). Plaintiff's SAC alleges claims for disparate treatment (Count I) and refusal to make a reasonable accommodation (Count II).

[1] See also 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990, as such sections relate to employment." (citations omitted)); *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013) ("the Rehabilitation Act incorporates the standards applicable to Title I of the ADA").

In its order granting Defendant's motion to dismiss in part, the Court concluded based on *Untermyer v. College of Lake County*, 284 Fed. Appx. 328, 330 (7th Cir. 2008), *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 n.5 (7th Cir. 2000), and *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 933 (7th Cir. 1993), that Illinois' two year statute of limitations for personal injury actions applied to Plaintiff's Rehabilitation Act claims, and therefore Plaintiff's claims were barred to the extent that they were based on alleged disparate treatment or refusals to accommodate that occurred prior to July 23, 2011—two years before Plaintiff filed his original complaint. See [57] at 14-15, 18. The Court further concluded that the continuing violation doctrine did not operate to toll the statute of limitations because the incidents of discrimination alleged by Plaintiff—the denial of his accommodation request in December 2009, his termination in July 2012, and other failures to accommodate between those two dates—constituted separate actionable unlawful employment practices. See *id*. at 19-20 (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Finally, the Court concluded that Plaintiff could pursue his Rehabilitation Act claims for disparate treatment and refusal to make a reasonable accommodation "to the extent that after July 23, 2011 [Defendant] made explicit decisions not to accommodate Plaintiff's scheduling request or took other explicit actions that violated his rights under the Rehabilitation Act." *Id.* at 22.

More than sixteen months after the Court issued its order, Plaintiff's counsel filed a motion for reconsideration. Counsel argues that he could not have made his arguments earlier because he did not have an opportunity to respond to arguments that Defendant made for the first time in its reply brief in support of its motion to dismiss the SAC. Assuming this is true, counsel could have sought leave to file a surreply before the Court made its ruling, or filed a motion for reconsideration within a reasonable time after. Counsel has no reasonable excuse for his

excessive delay.[2]  In addition, counsel's arguments in support of reconsideration are difficult to follow due to counsel's many typographical errors and disjointed and incomplete sentences[3] and counsel's failure to support the motion with citations to the SAC and legal precedent.[4] Nonetheless, the Court retains discretion to reconsider its rulings at any time before final judgment (see Fed. R. Civ. P. 54(b); *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 985 (N.D. Ill. 2013)) and the Seventh Circuit has expressed a preference that district courts allow, where possible, cases to be decided on the merits.  The Court concludes that reconsideration is warranted here to correct and clarify certain aspects of its order [57] dismissing the SAC in part.

---

[2] Counsel has also repeatedly failed to meet his obligations to appear at scheduled hearings before this Court, see [64], [71], [75], [84], [95], [100], and to comply with discovery deadlines, see [71], [91].  As a result, Defendant has moved to dismiss Plaintiff's claim for a failure to prosecute.  See [97].

[3] See, e.g. [86] at 7 ("Alternatively, Defendants themselves made it impossible to plead such a cause of action as even they admit that Plaintiff alleged that they witheld" [end of sentence]); *id.* at 9  ("Further, Plaintiff need not argue over what he plead when he could still amend his pleading, and he did not argue it, he proved by merely writing one sentence which sited to paragraphs and the exhibit to his complaint which in fact showed that he asked to be reassigned (and the term is 'reassign' as the statute never says 'transfer') to light duty, and Defendants denied stating he they found that he was not yet able despite what his physician had stated."); *id.* at 10 ("In fact the mistake was on the on the part of Plaintiff's counsel is that he attempted to understand Defendants position, i.e. 'discreet events' or 'made up of discreet events' as if it made sense, when in fact it is was nothing but nonsense, as a failure to accommodate claim is on its face a claim *can never be result of a event discreet!*" (emphasis by Plaintiff)); *id.* at 11 ("Further, in allowing that Defendant failed to interact with Plaintiff to stand, as Defendant did, is illusory, as Defendant is certainty aware that a failure to engage in the interactive process is insufficient to even defeat a motion for summary judgment.").

[4] See, e.g., 86-1 at 6 (asserting without citation that "the very nature of the Rehabilitation Act of 1973/ADA violation cannot possibly be pled as 'discrete acts' which can be pinpointed in time"); *id.* at 10 (arguing without citation that "Plaintiff would be required to plead himself out of Court if pleading that a specific accommodation was requested but denied, with few exceptions"); *id.* at 11 (asserting without citation that "any failure to accommodate claim necessarily contains within it the possibility of proving said claim by showing that an open position was available for which he was eligible and that a non-disabled person was chosen to fill it—even it word 'transfer' is never mentioned in any pleading"); *id.* at 14 (arguing without citation that "[a] 'failure to accommodate' clearly cannot be stated as a single discreet act, being that it is by title and definition a *failure to act*" because "[o]ne cannot possibly pinpoint when an employer fails to accommodate an employee").

In his motion for reconsideration [86], Plaintiff argues that the Court erred by partially dismissing his claims under the Rehabilitation Act for disparate treatment (Count I) and failure to accommodate (Count II). Specifically, Plaintiff argues that the Court erred by: (1) construing his SAC not to allege that Defendant failed to transfer Plaintiff to a vacant position; (2) not reaching the issue of whether a two or four-year statute of limitations would apply to Rehabilitation Act claims based on an alleged failure to transfer; and (3) concluding that the continuing violation doctrine does not apply to Plaintiff's claims.[5]

## A.    Failure to Transfer

The Court turns first to its prior ruling that Plaintiff failed to allege the elements of a "failure to transfer" claim as set forth in *Donahue v. Consolidated Rail Corp.*, 224 F.3d 226 (3d Cir. 2000). See [57] at 17. In *Donahue*, the Third Circuit granted summary judgment to the employer on the employee's reasonable accommodation claim, which was based on the employer's alleged failure to transfer the employee to a vacant position, because the employee failed to demonstrate: "(1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation." 224 F.3d at 230. *Donahue* is not binding on this Court and did not set pleading standards. Instead, it was decided on a motion for summary judgment, which subjects the plaintiff to a much higher burden than a motion to dismiss. At the pleading stage, "[s]pecific facts are not necessary," so long as the pleadings

---

[5] Plaintiff also argues that "the Court failed to address entirely whether Plaintiff had properly plead causes of interference and retaliation under the Family Medical Leave Act." See [86-1] at 14-15. However, the SAC does not contain any claims for violation of the FMLA. See [35]. In addition, Plaintiff requests that the Court "enter Judgment on the Pleadings against Defendant with regard to Count I and II," but fails to explain why he is entitled to such relief. [86] at 1. Plaintiff is not entitled to reconsideration based on these two wholly frivolous and undeveloped arguments.

"give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The Court is not aware of any Seventh Circuit precedent that requires a complaint to allege facts supporting each of the *Donahue* elements. Therefore, the Court will re-examine Plaintiff's SAC using the Seventh Circuit's established pleading standards for failure to accommodate and disparate treatment claims under the Rehabilitation Act.

### 1.    Denial of a Reasonable Accommodation

Upon reconsideration, the Court concludes that the SAC's allegations are sufficient to state a claim for denial of a reasonable accommodation based on Defendant's alleged failure to transfer Plaintiff to a vacant position.[6] "Reassignment to a vacant position is a form of reasonable accommodation." *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001); see also 42 U.S.C. § 1211(9) (defining the denial of a reasonable accommodation to include the "failure to reassign a disabled employee to a vacant position"). The ADA, which the Rehabilitation Act follows, "mandate[s] that an employer appoint employees with disabilities to vacant positions for which they are qualified, provided that such accommodations would be ordinarily reasonable and would not present an undue hardship to that employer." *E.E.O.C. v. United Airlines, Inc.*, 693 F.3d 760, 761 (7th Cir. 2012). A plaintiff alleging a failure to accommodate under the Rehabilitation Act, including a failure to transfer, must "make out a

---

[6] While Plaintiff was not required to limit the SAC to a specific type of reasonable accommodation, the factual allegations in the SAC must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The complaint must "give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 . Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011).

*prima facie* case by establishing" three statutory elements: "(1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability." *Ozlowski*, 237 F.3d at 840 (internal quotation marks and citations omitted).[7]

The third element, Defendant's failure to make a reasonable accommodation, is the only one at issue here. The SAC alleges the following background facts in support of this claim: Plaintiff was employed by Defendant as a bus operator from July 1997 until July 2012. In July 2009, Plaintiff was diagnosed with end stage renal failure. Until Plaintiff receives a kidney transplant, he is required to attend four-and-a-half-hour long dialysis appointments three times each week to treat his medical condition. "[O]n or around September of 2009 Plaintiff asked [Defendant] for a reasonable accommodation in the form of a schedule change so that he could attend his dialysis sessions, *or alternatively, to put him on some type of light duty or transfer him to light duty*, as recommended by his doctors." [35] at 4 (emphasis added). On October 13, 2009, Defendant's "Disability Review Committee" informed Plaintiff that it had decided to place Plaintiff in a program called Temporary Medical Disability (TMD) Area 605 ("Area 605"). [35] at 4-5. The Committee's letter stated that Plaintiff's return to his previous job classification would be dependent on Defendant's medical approval clearance and a budgeted vacancy. [35] at 5. On December 15, 2009, Defendant responded to Plaintiff's request for an accommodation and told Plaintiff that it understood that Plaintiff could not perform the essential functions of bus operator and was unable to place him in a "lighter duty" position because no position was

---

[7] "[A]n employer's accommodation duty is triggered only in situations where an individual who is qualified on paper"—"by, for example, possessing 'the requisite skill, experience, education and other job-related requirements of the employment position' at issue"— "requires an accommodation in order to be able to perform the essential functions of the job." *Brumfield*, 735 F.3d at 632 (citing 29 C.F.R. § 1630.2(m)). "Thus, to satisfy the first element of a failure-to-accommodate claim, the plaintiff must show that she met the employer's legitimate selection criteria and needed an accommodation to perform the essential functions of the job at issue[.]" *Id.* at 633.

available that had the hours he requested. [35] at 22. The SAC refers to this as Defendant's "first formal denial of his request for accommodations." *Id.* at 18. In March 2010, Plaintiff filed an EEOC complaint against Defendant. *Id.* See [35] at 27 (first page of EEOC intake questionnaire). Additionally, "[o]n various occasions" between September 2009 and March 2013, Plaintiff made additional "requests for reasonable accommodations"—including but not limited to rescheduling, switching bus routes, a 30 minute lunch break to take his medication, reassignment, and change in schedule—which would allow him to return to work. *Id.* at 8. In July 2012, Defendant terminated Plaintiff's employment. *Id.* at 7.

In the failure to accommodate claim itself (Count II), the SAC alleges that Defendant violated the Rehabilitation Act by, among other things, failing to place him in a vacant position for which he was qualified and instead "hiring outside employees for jobs which he was capable of performing, as well as contracting with employment placement agencies in order to find less expensive workers," despite the fact that "Plaintiff regularly updated [Defendant] with medical records and requests to be placed in his bus driving position, *or some like position*." [35] at 11 (emphasis added). Count II also incorporates by reference Plaintiff's allegation in Count I that Defendant barred him and all other employees in Section 605 from viewing available open positions within the CTA. [35] at 9, 10. Plaintiff requests to be reinstated "to the position of bus driver *or some other position* which is available." *Id.* at 12 (emphasis added).

The Court concludes that these allegations are sufficient to state a claim that Defendant failed to provide a reasonable accommodation for his disability, in violation of the Rehabilitation Act, by refusing to transfer Plaintiff to vacant positions for which he was qualified.

### 2. Disparate treatment

The Court also concludes that the SAC's allegations are sufficient to state a claim for disparate treatment based on Defendant's alleged failure to consider him for a vacant position. "In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 974 (7th Cir. 2015).

Here, Plaintiff alleges that he is disabled due to his kidney failure ([35] at 7), that he is qualified for the position of bus operator and for other positions that became vacant while he was in Area 605 (*id.*), that he terminated and not considered for vacant bus driver and other positions due to his disability (*id.*), and that Defendant hired new and/or temporary employees, who were not disabled, to fill those job vacancies (*id.* at 8-9). These allegations are sufficient to state a claim for disparate treatment in violation of the Rehabilitation Act based on Defendant's alleged refusal to transfer Plaintiff to a vacant position.

### B. Statute of Limitations

Having determined that Plaintiff has stated Rehabilitation Act claims based on CHA's alleged failure to transfer him to an open position, the Court must determine whether these claims are governed by a two-year or a four-year statute of limitations. The Rehabilitation Act does not contain its own statute of limitations; therefore the Court borrows the statute of limitations from the most analogous limitations period from state law. See *Cheeney v. Highland Cmty. Coll.*, 15 F.3d 79, 81 (7th Cir. 1994). In cases filed in Illinois, the Seventh Circuit has applied the two-year statute of limitations set forth in Illinois' personal injury statute to

Rehabilitation Act claims. See *Untermyer*, 284 Fed. Appx. at 330 & n.1 (Illinois' two-year statute of limitations for personal injury claims applied to claim brought by deaf student under the Rehabilitation Act, 29 U.S.C. § 794, for failure to provide a quality sign language interpreter for classes); *Bush*, 990 F.2d at 933 (same, in case involving Rehabilitation Act claim that employer discriminated against employee due to his knee injury); *Conley*, 215 F.3d at 710 & n.5 (granting summary judgment to employer on employee's Rehabilitation Act claim for discriminatory suspension based on Illinois' two-year statute of limitations for personal injury claims, where the suspension was a "discrete act, taken at a definite time, in response to [the employee's] alleged failure to report for work in a timely manner").

Plaintiff, relying on *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), argues that the Court erred by applying Illinois' two-year statute of limitations for personal injury actions rather than the four-year "catchall" federal statute of limitations, 28 U.S.C. § 1658(a), to his Rehabilitation Act claims. Section 1658 provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). In *Fowler*, the Third Circuit held that the plaintiff's Rehabilitation Act failure to accommodate claim, which was based on allegations that the employer failed to transfer the disabled plaintiff to a vacant position, was governed by the federal statute of limitations rather than Pennsylvania's two-year statute of limitations for personal injury actions. *Fowler*, 578 F.3d at 206-09. The Third Circuit was guided by the Supreme Court's holding in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's four–year statute of limitations—if the plaintiff's claim against the

defendant was made possible by a post–1990 enactment." *R.R. Donnelley*, 541 U.S. at 382. In *R.R. Donnelley*, the Supreme Court explained that the federal statute of limitations applies not only to post-1990 statutes that establish new causes of action, but also to new rights created through the amendment of existing statutes, the altering of statutory definitions, or the adding of new definitions for terms that were previously undefined. *Id.* at 381.

Applying *R.R. Donnelley*, the Third Circuit in *Fowler* held that a Rehabilitation Act failure to accommodate claim based on an alleged failure to transfer is governed by the federal statute of limitations because, prior to the Rehabilitation Act's adoption of the ADA's standards in 1992, "[e]mployers were not required" by the Rehabilitation Act "to transfer a disabled employee to a vacant position as an accommodation of his or her disability." *Fowler*, 578 F.3d at 208 (citing *School Board of Nassau County v. Arline,* 480 U.S. 273, 289 n.19 (1987)).[8]

Like the Third Circuit in *Fowler*, the Seventh Circuit also has recognized that until the Rehabilitation Act adopted the ADA's standards in 1992, "the Rehabilitation Act and its regulations did not include reassignment to a vacant position within the list of potential reasonable accommodations." *Gile v. United Airlines, Inc*., 95 F.3d 492, 496-97 (7th Cir. 1996). According to the Seventh Circuit, "[u]nder the earlier version, courts addressing an employer's obligation to reasonably accommodate a handicapped employee under the Rehabilitation Act held that an employer was not obligated to accommodate an employee by transferring or reassigning the employee to a different position where the employee could not perform the essential functions of the position he then held." *Id.* at 497 (citing *Arline*, 480 U.S. at 289 n.19;

_____

[8] See also 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment."); 42 U.S.C. § 12111(9) (ADA provision defining "reassignment [of a disabled employee] to a vacant position" as a type of "reasonable accommodation").

*Fedro v. Reno,* 21 F.3d 1391, 1395 (7th Cir. 1994); *Guillot v. Garrett,* 970 F.2d 1320, 1326 (4th Cir.1992)).

The Seventh Circuit has not, however, decided the ultimate issue addressed in *Fowler*: whether, under *R.R. Donnelley*, the federal statute of limitations applies to a Rehabilitation Act claim that is based on an alleged failure to transfer the employee to a vacant position.[9] The only post-*R.R.Donnelley* case in which the Seventh Circuit has addressed the statute of limitations for Rehabilitation Act claims, *Untermyer*, did not involve allegations of a failure to transfer a disabled employee to a vacant position, but rather involved a school's failure to provide a quality sign language interpreter for a deaf student's classes. 284 Fed. Appx. at 329. The Court is persuaded by *Fowler* and by the broad reading that the Supreme Court gave to Section 1658 in *R.R. Donnelley* that, to the extent that Plaintiff's Rehabilitation Act claims are based on an alleged failure to transfer Plaintiff to a vacant position, the four-year statute of limitations in Section 1658 applies. See *Fowler*, 578 F.3d at 209. This means that Plaintiff's Rehabilitation Act claims are timely to the extent that they allege that Defendant discriminated against and failed to accommodate Plaintiff by failing to transfer him to a vacant position between December 15, 2009 (when he received Defendant's first form denial letter) and July 2012 (when he was terminated), because Plaintiff filed his complaint less than four years later, on July 23, 2013. See [1].

### C. The Continuing Violation Doctrine

The final issue that the Court must address is whether the SAC alleges a continuing violation of the Rehabilitation Act, such that the statute of limitations was tolled for discriminatory acts that occurred prior to July 23, 2011 (or July 23, 2009, in the case of denials of requests for reassignment to a vacant position). In its prior order, the Court concluded that

---

[9] *Conley* was not a failure to transfer case.

Plaintiff's Rehabilitation Act claims were barred by the statute of limitations to the extent that those claims were based on allegations of discrete employment actions that occurred before July 23, 2011, which would include Defendant's decision to place him in Area 605 on October 13, 2009 and Defendant's denial of Plaintiff's requested accommodation on December 15, 2009. [57] at 22.

In his motion for reconsideration, Plaintiff argues that his Rehabilitation Act claims are not barred by the statute of limitations at all, due to operation of the continuing violation doctrine. See [86] at 10. Citing *Place v. Abbott Laboratories*, 215 F.3d 803 (7th Cir. 2000), Plaintiff contends that the Seventh Circuit recognizes two theories of the continuing violation doctrine which are applicable under the facts alleged in the SAC: (1) "where the exact day of the violation is difficult to pinpoint because the employer's decisionmaking process takes place over a period of time"; and (2) "where the employer has a systematic, openly espoused policy alleged to be discriminatory." *Id.* at 808. See also [86-1] at 5.

As to the first theory, the SAC alleges that Plaintiff was put in Area 605 for three years "under the false impression that he would be allowed back to his position" and was required to give Defendant "medical updates under the false impression that he would be placed in a position" when one became vacant. *Id.* at 7-8. As to the second theory, the SAC suggests that Defendant had express discriminatory policies that it applied only to its disabled employees. See *Tinner*, 308 F.3d at 707. Specifically, Plaintiff alleges that Defendant had a policy of placing disabled employees in Area 605 and informing them via form letter that their return to their previous job classifications would be based upon Defendant's medical approval clearance and a "budgeted vacancy," which might be construed as a policy that limits employees' ability to obtain reasonable accommodations for their disabilities. Plaintiff also alleges that Defendant had

an express policy to bar Area 605 employees from seeing job vacancies, which might constitute disparate treatment and conflict with the requirement that an employer engage in an interactive process to accommodate its employee's disability by, among other things, offering a transfer to a vacant position as an accommodation.

Since *Place* was decided, the case law on the application of the continuing violation doctrine to employment discrimination claims has evolved.[10]  Generally speaking, the statute of limitations on an employment discrimination claim "begins to run as soon as [the employee] is informed of the allegedly unlawful employment practice."  *Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1159 (7th Cir. 2012).  "The continuing violation doctrine acts as a defense to the statute of limitations by delaying its accrual or start date."  *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010).  The purpose of the doctrine is "to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought."  *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008).  Thus, it is really "a doctrine not about a continuing, but about a cumulative, violation."  *Id.*  The doctrine "is applicable only if 'it would have been unreasonable to expect the plaintiff to sue before the statute ran on th[e] conduct[.]'" *Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999) (quoting *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1167 (7th Cir. 1996)).

In 2002, the Supreme Court held that one continuing violation theory recognized by the Ninth Circuit—where acts occurring outside the statutory period are "sufficiently related" to incidents failing within the statutory period—was not applicable to Title VII discrimination claims that were based on "[d]iscrete discriminatory acts."  536 U.S. at 114.  The Supreme Court explained that such acts, including specifically "termination, failure to promote, denial of

---

[10] The Court is guided by the Supreme Court and the Seventh Circuit's decisions concerning the accrual of employment discrimination claims brought under Title VII and the ADA, since there are few cases discussing the continuing violation doctrine in the specific context of the Rehabilitation Act.

transfer, or refusal to hire," "are easy to identify," and therefore, "are not actionable if time barred, even when they are related to acts" that occurred within the limitations period for filing a charge with the EEOC. 536 U.S. at 113-14.[11] By contrast, the Supreme Court explained, "[a] charge alleging a hostile work environment claim * * * will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period," *id.*, because "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice." *Id.* at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)); *see also id.* at 115 (explaining that hostile environment claims by "[t]heir very nature involve[] repeated conduct" and "therefore cannot be said to occur on any particular day").

The Supreme Court concluded that "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e–5(e)(1)" or his claims are time barred. *Morgan*, 536 U.S. at 122. The Court recognized, however, that "[t]here may be circumstances where it will be difficult to determine when the time period should begin to run" and "[o]ne issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered." *Id.* at 115 n.7. The Court found it unnecessary to address that issue because the plaintiff "believed that he was being discriminated against at the time that all of these acts occurred." *Id.* The Court also did not address whether the other type of continuing violation recognized in the Ninth Circuit—where the plaintiff shows "a systematic policy or practice of discrimination that operated, in part, within the limitations

---

[11] The Seventh Circuit has subsequently clarified that when *Morgan* "speak[s] of a discrete act, [it] mean[s] a discrete claim of discrimination that is actionable itself," i.e. a "freestanding violation." *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008).

period," *i.e.*, "a systemic violation"—had any applicability to employment discrimination claims other than hostile work environment claims.

In *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002), which was decided four months after *Morgan*, the Seventh Circuit considered the application of the continuing violation doctrine to a plaintiff's Title VII claim that his employer discriminated against him by transferring him to a different geographical area in 1990, admonishing him for failing to complete paperwork in 1993, providing him with a written warning for a dress code violation in 1994, and discharging him in 1996. See *id.* at 699-700.[12] The plaintiff did not file timely EEOC charges challenging the first three alleged incidents of discrimination, but did file a timely charge challenging his discharge. The plaintiff argued that the three earlier incidents were all part of a continuing violation and, therefore, were covered by the timely charge. The Seventh Circuit explained that a continuing violation may exist under three circumstances, where: (1) "an employer makes employment decisions over time that make it difficult for the employee to determine the actual date of discrimination"; (2) the employee's claim "involves an express discriminatory policy of the employer"; and (3) "discrete acts of discrimination are part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period." *Tinner*, 308 F.3d at 707. The Seventh Circuit determined that the first two theories did not apply to the plaintiff's claims, because the plaintiff admitted that he had felt discriminated against and complained after the 1990, 1993, and 1994 incidents, and did not allege that his employer had an express discriminatory policy. *Id.*

The Seventh Circuit then considered whether the four incidents were part of an "ongoing pattern" of discrimination, with at least one event of discrimination occurring with the limitations

---

[12] "[T]he doctrine of continuing violation is one governing accrual, not tolling, and is therefore governed by federal law." *Clark v. City of Braidwood*, 318 F.3d 764, 766 (7th Cir. 2003) (citing *Heard v. Seahan*, 253 F.3d 316, 319 (7th Cir. 2001)).

period. The court explained that, pursuant to *Morgan*, "a plaintiff who feels discriminated against by a discrete act, but fails to timely file charges on that act, cannot later reach back to those events when the statute of limitations expires in order to form a continuing violation claim." *Tinner*, 308 F.3d at 708. In other words, "if the employee knew, or with the exercise of reasonable diligence should have known, that each act, once completed, was discriminatory, the employee must sue upon that act within the relevant statutory period." *Id*. The court examined "three additional factors" to determine if the four incidents were part of an ongoing pattern of discrimination: "1) whether the acts involve the same subject matter; 2) the frequency with which the acts occur; and 3) the degree of permanence of the alleged acts of discrimination that should trigger an employee's awareness and duty to assert his rights." *Id*. The court concluded that the four acts of discrimination alleged by the plaintiff were not part of an ongoing pattern of discrimination because the employee "admit[ted] that he felt discriminated against on the basis of his race and that he complained after each incident"; "these incidents were not frequent enough because there was a six-year, three-year and two-year gap, respectively, between each discrete act and [the plaintiff's] termination in 1996"; and "the degree of permanence surrounding his debit route transfer in 1990 certainly should have made [the employee] aware of the need to protect his rights." *Id.* at 709.

In several cases following *Tinner*, district courts recognized that the continuing violation doctrine may, under the right facts, apply to failure to accommodate claims. In *Sutton v. Potter*, 2004 WL 603477 (N.D. Ill. Mar. 22, 2004), the court determined that one of the three theories of the continuing violation doctrine discussed in *Tinner*—where an employer makes employment decisions over time that make it difficult for the employee to determine the actual date of discrimination—applied to the plaintiff's claim that USPS committed disability discrimination in

violation of the ADEA and the Rehabilitation Act by terminating her rather than reasonably accommodating her medical condition by providing her with a job transfer or other reasonable accommodation. *Id.* at *5, 8-9. The court explained that "[t]here was no definitive temporal marker distinguishing for [the plaintiff] at what moment [her employer's] failure to accommodate ceased to constitute the normal and expected administrative delay or red-tape associated with the process of reasonably accommodating, and started characterizing disability discrimination instead." *Id.* at *6.

The *Sutton* court concluded, however, that the plaintiff was not entitled to take advantage of the continuing violation doctrine because "the reasonableness of delaying a suit forms the crux of the continuing violation doctrine" and plaintiff's delay of nine years was unreasonable where "a reasonable person should have understood [the employer's] inaction as a clear signal that it had no intention of reasonably accommodating [her]." *Id.*; see also *Arnold v. Janssen Pharma., Inc.*, 215 F. Supp. 2d 951, 959-60 (N.D. Ill. 2002) (pre-*Morgan*, denying employer's motion to dismiss Arnold's ADA failure to accommodate claim due to her failure to file an EEOC charge within 300 days, because "[p]erhaps it took some time for Arnold to realize that her employer was being unreasonable in failing to accommodate her disability" and "[i]t might well have been reasonable for Arnold to have given her employer a few months to make good on such promises").

In *Kraus v. Shinseki*, 846 F. Supp. 2d 936 (N.D. Ill. 2012), the district court identified another theory of the continuing violation doctrine—where the employer covertly follows a practice of discrimination over a period of time—that may be applicable to an employee's request for a reasonable accommodation in the form of a job transfer. *Id.* at 949. The court concluded that the employer was not entitled to summary judgment on statute of limitations

grounds on plaintiff's Rehabilitation Act failure to accommodate claim, because, based on the record before the court, "a reasonable trier of fact could conclude that Kraus did not know that his accommodation requests were denied until he was terminated in December 2010," given that "facts [we]re disputed as to whether [the employee's] 2007 request for accommodation, and continuing requests thereafter, was formally denied." *Id.*.

More recently, however, the Seventh Circuit held in an unpublished opinion involving an ADA failure to accommodate claim that "a refusal to accommodate is a discrete act—not an ongoing omission—and therefore the continuing violation doctrine does not apply[.]" *Teague v. Nw. Mem'l Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012). The Seventh Circuit, relying on precedent from other circuits, concluded that the defendant employer was entitled to summary judgment on the plaintiff employee's failure to accommodate ADA claim to the extent that it was based on denials of requested accommodations that occurred more than 300 days before she filed a charge of discrimination with the EEOC and before she had to take a medical leave of absence (at which time she no longer qualified as a "qualified individual with a disability" entitled to a reasonable accommodation under the ADA). *Id.* (citing *Tobin v. Liberty Mut. Ins. Co.,* 553 F.3d 121, 130-31 (1st Cir. 2009) *Mayers v. Laborers' Health & Safety Fund of N. Am.,* 478 F.3d 364, 368 (D.C. Cir. 2007); *Proctor v. United Parcel Service,* 502 F.3d 1200, 1210 (10th Cir. 2007)). *Teague* does not discuss *Tinner* or *Place* or acknowledge the three types of continuing violations identified in those cases.

Taken together, the precedent from this Circuit is not entirely clear concerning the continued applicability to employment discrimination claims (other than hostile work environment claims) of the two continuing violation theories that Plaintiff relies on in his motion for reconsideration: (1) where the date a discriminatory decision was made is difficult to

pinpoint; and (2) where the employer is acting based on an express discriminatory policy. See [86-1] at 5. Nonetheless, the Court concludes that the first theory is inapplicable to Plaintiff's Rehabilitation Act claims under the facts alleged in the SAC. Unlike in *Shinseki*, where the record showed that the plaintiff may not have known until the time of his termination that his requests for reasonable accommodations had been formally denied, in this case the SAC pinpoints the exact dates of certain acts that Plaintiff alleges to be discriminatory. Specifically, the SAC alleges that Plaintiff was informed on October 13, 2009 that he had been placed in Area 605 and that on December 15, 2009 Defendant issued a "formal denial" of his request for accommodation. [35] at 3-4, 18. And unlike in *Sutton*, in this case Plaintiff's SAC acknowledges that there was a "temporal marker" between Defendant's reasonable attempts to find an accommodation for Plaintiff and its denial of a requested accommodation: the December 15, 2009 denial letter, which Plaintiff complained of to the EEOC in March 2010. See [35] at 18; see also *Teague*, 836 F. Supp. 2d at 730 n.1 (distinguishing *Sutton* on the basis that "[i]n this case, plaintiff admits that she understood defendant's conduct as a failure to accommodate her at the time, so there is no basis for departing from the general rule that the limitations period begins to run at the occurrence of the allegedly discriminatory act"). In short, the SAC alleges that plaintiff "fe[lt] discriminated against" by Defendant's placement of him in Area 605 in October 2009 and formal denial of his request for accommodation in December 2009, but failed to file suit against Defendant within two years. *Tinner*, 308 F.3d at 708. The continuing violation doctrine is inapplicable under these circumstances.

As the Court's prior order concluded, however, this does not mean that Plaintiff is barred from challenging Defendant's denial of all of his requests for accommodation. See [57] at 20-22. The SAC alleges that "[o]n various occasions" between September 2009 and March 2013,

Plaintiff "made requests for reasonable accommodations"—including but not limited to rescheduling, switching bus routes, a 30 minute lunch break to take his medication, reassignment, and change in schedule—which would allow him to return to work. [35] at 8. To the extent that these additional requests for accommodation were not addressed in Defendant's December 2009 denial letter and were not formally denied by Defendant prior to July 23, 2011, they are actionable. See *Morgan*, 536 U.S. at 113.

The applicability of the second continuing violation theory asserted by Plaintiff on reconsideration—that Defendant's discriminatory actions were based on an express discriminatory policy—presents a more difficult question. This "systemic violation" theory has been "applied exclusively in cases where the alleged discrimination involves a particular class of people[.]" *Iovinelli v. Pritchett*, 2008 WL 2705446, at *11 (N.D. Ill. July 9, 2008). The theory "is typified by *Bartmess v. Drewrys USA, Inc*., 444 F.2d 1186 (7th Cir. 1971), in which the employer's express, openly espoused policy" requiring women to retire at 62 and men to retire at 65 "was alleged to be discriminatory." *Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 121 (7th Cir. 1982).[13] In *Morgan*, the Supreme Court "did not directly address whether the continuing-violation doctrine applies where an *ongoing discriminatory policy* results in discrete discriminatory acts both before and after the limitation date." *Chin v. Port Auth. of New York &*

---

[13] In *Bartmess*, "[t]he plaintiff filed a discrimination charge shortly before her mandatory retirement," her employer argued that her complaint was not timely because she had not yet been forced to retire, and the Seventh Circuit "held that the policy amounted to a continuing violation of Title VII, so that her filing was not premature." *Stewart*, 679 F.2d at 121 (citing *Bartmess*, 444 F.2d at 1188); see also *Johnson v. Milwaukee Sch. of Eng'g*, 258 F. Supp. 2d 896, 902 (E.D. Wis. 2003) (explaining that "[a]n example of a systemic violation would be a company policy against the promotion of women," and "the continuing violations doctrine would allow a female employee of the company to sue even if she herself had not been denied a promotion during the limitations period," but finding this theory inapplicable because the plaintiff's "only proof regarding the alleged discriminatory policy concerning promotions is that promotional opportunities in the housekeeping department were not posted," which fell "far short of demonstrating a systemic violation").

*New Jersey*, 685 F.3d 135, 156 (2d Cir. 2012) (emphasis added). Although the Seventh Circuit in *Tinner* recognized that the theory remained viable post-*Morgan*, 308 F.3d at 707, this Court is not aware of any post-*Morgan* cases from this Circuit in which the theory has been found to apply. Cf. *Dooley v. Abbott Labs.*, 2009 WL 1033600, at *7 (N.D. Ill. Apr. 17, 2009) ("Dooley has not produced any evidence of an express discriminatory policy against the disabled and she concedes that Abbott had an express policy of *not* discriminating against the disabled. Therefore, she has not shown that Abbott's refusal of her requested accommodations constituted a continuing violation by reason of an express discriminatory policy."); *Williams v. Zaruba*, 2014 WL 6887211, at *4 (N.D. Ill. Dec. 4, 2014) (recognizing, in a section 1983 case discussing Title VII precedent, that a continuing violation may exist "where the employer has a systematic, openly espoused policy alleged to be discriminatory," but concluding that the theory was inapplicable because "Plaintiffs make no argument that Defendants openly espoused a discriminatory policy"); *Hilliard v. State of Ill.*, 2006 WL 1751015, at *2 (S.D. Ill. June 21, 2006) ("The second [type of continuing violation] arises when an employer follows an express discriminatory policy. Hilliard does not allege that the IDOC followed an express discriminatory policy in its actions; therefore, the second theory is also inapplicable.").

In other circuits, however, courts confronting similar issues have "held that an allegation of an ongoing discriminatory policy does not extend the statute of limitations where the individual effects of the policy that give rise to the claim are merely discrete acts." *Chin*, 685 F.3d at 157-58 (citing *Williams v. Giant Food Inc.,* 370 F.3d 423, 429 (4th Cir. 2004) ("Nor does [the plaintiff's] allegation of a 20–year 'pattern or practice' of discrimination extend the applicable limitations periods."); *Davidson v. Am. Online, Inc.,* 337 F.3d 1179, 1185–86 (10th Cir. 2003) (holding that claims cannot be premised on an untimely discrete act "even if the

discrete act was part of a company-wide or systemic policy"); *Tademe v. St. Cloud State Univ.,* 328 F.3d 982, 988 (8th Cir. 2003) ("Although [the plaintiff] argues that the district court failed to consider that he was asserting a pattern-or-practice of discrimination, *Morgan* makes clear that the failure to promote, refusal to hire, and termination are generally considered separate violations."); *Lyons v. England,* 307 F.3d 1092, 1107 & n.8 (9th Cir. 2002) (holding that an individual plaintiff's "assertion that this series of discrete acts flows from a company-wide, or systemic, discriminatory practice will not succeed in establishing the employer's liability for acts occurring outside the limitations period," but distinguishing and declining to address class-wide pattern-or-practice claims)). For instance, in *Chin*, the Second Circuit explained that, "under *Morgan*, every failure to promote is a discrete act that potentially gives rise to a freestanding Title VII claim with its own filing deadline." 685 F.3d at 157. The Second Circuit concluded that "*Morgan*'s reasoning * * * demonstrates that a plaintiff may recover for a failure to promote—*regardless whether it was caused by an ongoing discriminatory policy*—only if he files an EEOC charge within 180 or 300 days of that decision." *Id.* at 156-57 (emphasis added).

In this case, the Court concludes that it is bound by *Tinner*, which recognizes that a continuing violation may exist in the employment discrimination context where the plaintiff alleges that the defendant has acted pursuant to an express discriminatory policy. While the unpublished *Teague* opinion suggests that this theory may no longer be viable where the alleged discrimination is the denial of a requested accommodation, *Teague* does not discuss or overrule *Tinner*. Therefore, the Court vacates its prior order to the extent that it dismissed the Rehabilitation Act claims on statute of limitation grounds and reinstates Counts I and II. This order is without prejudice to any arguments that Defendant may present in a motion for summary judgment.

**IV.    Conclusion**

For the reasons stated above, the Court grants in part Plaintiff's motion for reconsideration [86]. The Court's previous order [57] is vacated to the extent that it dismissed Plaintiff's Rehabilitation Act claims (Counts I and II) on statute of limitations grounds. In addition, the Union and Count IV of the Second Amended Complaint are dismissed from the case without prejudice due to Plaintiff's failure to serve the Union. See [57] at 23. Defendant's motion [97] to dismiss for want of prosecution is denied because Plaintiff's motion for reconsideration was already pending when Defendants filed their motion. This case is set for further status hearing on October 5, 2016, at 9:00 a.m.

Dated: September 21, 2016

_____
Robert M. Dow, Jr.
United States District Judge